UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

JACQUELINE WONG.,

                    Plaintiff,

                                                11 Civ. 6291 (JGK)

          - against -
                                                OPINION AND ORDER

CKX, INC.,

                    Defendant.
────────────────────────────────

JOHN G. KOELTL, District Judge:

     The plaintiff Jacqueline Wong brings this action against

the defendant CKX, Inc. ("CKX") under the whistleblower

provision of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A.  The

plaintiff claims that CKX terminated her in 2009 in retaliation

for her raising concerns about the tax status of an acquisition

CKX made in 2005.  The defendant now moves to dismiss the

complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1)

and 12(b)(6), on the grounds that the plaintiff has allegedly

failed to exhaust her administrative remedies.  In the

alternative, the defendant moves to compel arbitration.


                              I.

     When presented with a motion under Rule 12(b)(1) to dismiss

for lack of subject matter jurisdiction and Rule 12(b)(6) to

dismiss for failure to state a claim upon which relief can be

1

granted, the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has subject matter jurisdiction necessary to consider the merits of the action.  See Rhulen Agency Inc., v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990); McKevitt v. Mueller, 689 F. Supp. 2d 661, 664 (S.D.N.Y. 2010); see also S.E.C. v. Rorech, 673 F. Supp. 2d 217, 220 (S.D.N.Y. 2009)

In defending a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When considering such a motion, the Court generally must accept the material factual allegations in the complaint as true.  See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).  The Court does not, however, draw all reasonable inferences in the plaintiff's favor.  Id.  Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings such as affidavits, documents, and testimony to determine whether jurisdiction exists.  See Filetech S.A. v. Fr. Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).  In so doing, the Court is guided by that body of decisional law that has developed under

Federal Rule of Civil Procedure 56.  See, e.g., Kamen, 791 F.2d
at 1011.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007).  The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985).  The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009).  While the Court should construe the factual allegations
in the light most favorable to the plaintiff, "the tenet that a
court must accept as true all of the allegations contained in
the complaint is inapplicable to legal conclusions."  Id.

When presented with a motion to dismiss pursuant to Rule
12(b)(6), the Court may consider documents that are referenced

3

in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. [1]  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002).

## II.

The following facts are undisputed, unless otherwise noted.

CKX is a corporation involved with the entertainment industry.  (Compl. ¶ 7.)  The company focuses on acquiring entertainment content and related assets such as the rights to the names and images of various celebrities.  (Compl. ¶ 7.)  On March 17, 2005, CKX acquired the stock of 19 Entertainment Limited ("19E"), a United Kingdom ("UK") company that held a two-thirds interest in the popular television franchise "American Idol."  (Compl. ¶ 11.)  Freemantle Media ("Freemantle"), a separate UK company with offices in the United

[1] Courts have treated a motion raising a non-exhaustion defense as proper under Rule 12(b)(1), see, e.g., Hines v. Valhalla Cnty. Corr. Facility, No. 01 Civ. 6935, 2002 WL 1822740, at *1-2 (S.D.N.Y. Aug. 8, 2002), under Rule 12(b)(6), see, e.g., Santiago v. Meinsen, 89 F. Supp. 2d 435, 438 (S.D.N.Y. 2000), or under some hybrid procedure, see, e.g., McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003).  There is, however, no practical difference in this case because the parties do not dispute that the Court can consider the documents proffered by the parties.

States, continued to hold a one-third interest in "American Idol." (Compl. ¶ 12.)

Almost a year later, in February 2006, CKX hired the plaintiff to serve as its Senior Tax Counsel. (Compl. ¶ 9.) Wong's duties as Senior Tax Counsel included finding ways to reduce CKX's tax liability. (Compl. ¶ 9.) In 2006, Wong determined that if 19E were to conduct business through a permanent establishment ("PE") in the United States – and thus have its income taxed primarily in the United States rather than in the UK – it would substantially reduce CKX's effective tax rate. (Compl. ¶ 18.)

At some point after this determination, Wong discovered that 19E might already have a PE in the United States through 19E's relationship with Freemantle. (Compl. ¶ 22.) Wong repeatedly raised concerns to the senior management of CKX regarding the fact that if 19E did have a PE in the United States, as she believed it did, CKX would be subject to United States taxes on 19E's income from the 2005 fiscal year onward. (Compl. ¶¶ 23-31.) CKX was then paying UK taxes on 19E's income and that was reflected in the defendant's filings with the Securities Exchange Commission ("SEC"). (Compl. ¶¶ 13-14.) If, in its SEC filings, CKX were to change 19E's tax status to the position Wong believed was correct the company would be liable

5

for nearly 100 million dollars in back taxes to the United
States government.  (Compl. ¶ 5.)

On September 14, 2009, CKX terminated Wong's employment.
(Compl. ¶ 32.)  Over two months later, on November 25, 2009,
Wong filed a demand for arbitration alleging breach of the
employment agreement.  (Burrows Decl., Ex. 3 ("Arb. Demand").)
On December 10, 2009, Wong filed a complaint with the
Occupational Safety and Health Administration of the Department
of Labor ("OSHA") seeking damages for retaliatory termination
pursuant to Section 806 of the Sarbanes-Oxley Act, 18 U.S.C.
§ 1514A.  (Burrows Decl., Ex. 4, ("OSHA Complaint").)  In her
OSHA complaint, Wong alleged that "she was terminated in
retaliation for her repeated complaints to management about the
tax structure of [CKX's] subsidiary, [19E], which she alleges
should have been taxed primarily in the United States, not the
United Kingdom, which created a potential tax liability that
should have been reported on the company's tax returns."
(Burrows Decl., Ex. 6, ("OSHA Findings") at 1.)

On May 11, 2010, OSHA, after completing its investigation,
dismissed Wong's complaint.  (OSHA Findings at 1-2.)  Wong then
requested, in accordance with the procedures called for under
the Sarbanes-Oxley Act, that her matter be referred to an
Administrative Law Judge ("ALJ"), and proceedings began in late

2010.  (Burrows Decl. ¶ 14.)  In March 2011, an ALJ held a three-day evidentiary hearing.  (Burrows Decl. ¶ 18.)  The matter remained pending before the ALJ until July 19, 2011, when Wong notified the ALJ that pursuant to 29 C.F.R. § 1980.114 she intended to terminate the proceedings with the ALJ and "file an action for de novo review in the appropriate District Court of the United States."  (Burrows Decl., Ex. 12.)  Accordingly, on Sept. 8, 2011, Wong filed her complaint in this Court, seeking relief under the whistleblower provision of the Sarbanes-Oxley Act.  (Burrows Decl., Ex. 1.)

The defendant argues that this Court lacks jurisdiction over the plaintiff's complaint because the plaintiff failed to exhaust her administrative remedies.  Alternatively, the defendant argues that even if the plaintiff has exhausted her administrative remedies, this dispute should be resolved in arbitration pursuant to a clause in the plaintiff's employment contract.

### III.

#### A.

An employee seeking relief under the Sarbanes-Oxley Act must first file a complaint with OSHA, the agency with delegated authority to receive such complaints.  29 C.F.R. § 1980.103(c)

(1998); see 18 U.S.C. § 1514A(b)(1)(A) (2006).  The complaint
need not be in any "particular form."  29 C.F.R.
§ 1980.103(b).  However, the complaint must contain the
following allegations: "(i) [t]he employee engaged in a
protected activity or conduct; (ii) [t]he [employer] knew or
suspected, actually or constructively, that the employee engaged
in the protected activity; (iii) [t]he employee suffered an
unfavorable personnel action; and (iv) [t]he circumstances were
sufficient to raise the inference that the protected activity
was a contributing factor in the unfavorable action."  Id. at
§ 1980.104(b)(1).  Once the employee has filed the complaint,
OSHA then has 60 days to issue written findings "as to whether
or not there is reasonable cause to believe that the respondent
has retaliated against the complainant in violation of the
[Sarbanes-Oxley] Act."  Id. at § 1980.105(a).

     The findings of OSHA generally become final within 30 days
of their receipt by the employer.  Id. at § 1980.105(c).
However, if a party seeks review of the OSHA findings the party
may timely file a petition requesting a hearing with an
Administrative Law Judge ("ALJ").  Id. at § 1980.107.  If any
party seeks review of the ALJ's decision, that party must file a
written petition for review with the Administrative Review Board
of the Department of Labor ("ARB"). Id. at § 1980.110(a).  The

final decision of the ARB must be issued within 120 days of the conclusion of the hearing before the ALJ, which is generally deemed to be 10 business days after the conclusion of that hearing.  Id. at § 1980.110(c).

However, if OSHA "has not issued a final decision within 180 days of the filing of the complaint," the employee may then bring "an action at law or equity for de novo review in the appropriate district court of the United States."  Id. at § 1980.114(a).  Therefore, the DOL has exclusive jurisdiction over a Sarbanes-Oxley claim for 180 days.  See Lebron v. Am. Int'l Grp., Inc., No. 09 Civ. 4285, 2009 WL 3364039, at *7 & n.64 (S.D.N.Y Oct. 19, 2009).  A federal court may not hear a Sarbanes-Oxley claim that is not first submitted to OSHA, see, e.g., Willis v. Vie Fin. Grp., Inc., No. Civ. A. 04-435, 2004 WL 1774575, at *6 (E.D. Pa. Aug. 6, 2004), and can only conduct de novo review of those Sarbanes-Oxley claims that have been administratively exhausted.  See Fraser v. Fiduciary Trust Co. Int'l, No. 04 Civ. 6958, 2005 WL 6328596, at *6 (S.D.N.Y. June 23, 2005).

**B.**

CKX argues that Wong did not administratively exhaust her claims because the complaint filed in this Court differs from

her OSHA complaint.  The issue is whether the claims in each complaint are in fact different.

The defendant points to factual differences between the OSHA complaint and the complaint in this Court.  The thrust of the defendant's argument is that the plaintiff, because of knowledge gained in the administrative process, has now tailored her factual allegations to mitigate deficiencies found in her OSHA claim.  First, the defendant asserts that the OSHA complaint alleged that CKX senior management concealed the plaintiff's concerns regarding the tax status of 19E from the Audit Committee of the Board of Directors, whereas the complaint filed in this Court contains no allegations regarding CKX's Audit Committee.  Second, the defendant contends that the OSHA complaint alleged that Wong brought 19E's incorrect tax position to the attention of senior management as soon as she was hired in 2006, whereas now, the complaint filed with this Court focuses only on the times Wong raised concerns in 2009, closer to the time of her termination.  As a result of these alleged factual differences, the defendant argues that Wong has now brought a different claim to this Court from the one she filed with OSHA, and, consequently, this Court lacks subject matter jurisdiction over this action.

A plaintiff's federal court complaint need not be identical to the OSHA complaint in order to exhaust the employee's claims. Rather, "[t]he appropriate inquiry under [the Sarbanes-Oxley Act] is not whether every fact forming the basis for the belief that gave rise to a plaintiff's protected activity was previously administratively pled, but whether each separate and distinct claim was pled before the agency." Sharkey v. J.P. Morgan Chase & Co., 805 F. Supp. 2d 45, 53 (S.D.N.Y. 2011). "[W]here [p]laintiff's claims, including specific adverse employment actions, protected activity, and the general nature of the facts that formed [p]laintiff's belief in violations of the enumerated statutes giving rise to the protected activity, were timely presented in her OSHA Complaint, and where more specific allegations naturally originating from those assertions have been alleged in the [complaint]," this Court has subject matter jurisdiction over the entirety of the complaint. See id. at 53-54.

In this case, the general nature of the facts pled in the OSHA complaint and the complaint before this Court is the same. The OSHA complaint alleges that from 2006 to 2009, Wong repeatedly raised concerns with CKX senior management regarding the tax status of 19E and that she was terminated for raising those concerns in 2009. (OSHA Complaint at 3-6.) Her complaint

11

before this Court alleges similarly that from 2006 to 2009, Wong became progressively concerned with 19E's tax status, notified CKX senior management of these concerns, and was terminated in 2009 as a result. (Compl. ¶¶ 21-34.) Indeed, CKX does not even argue that Wong has asserted additional factual allegations in her federal complaint. Rather, CKX argues that because the plaintiff has made fewer factual allegations, she is asserting a new claim. This argument is without merit because the thrust of the plaintiff's underlying claim here is the same as the one she filed with OSHA.

CKX's specific arguments about certain changed details are also without merit. CKX contends that Wong is only now arguing that the alleged protected activity took place in 2009, as opposed to earlier. However, Wong's OSHA complaint alleges facts that indicate that from 2006 to 2008, she informed CKX senior management only that she "suspected" that 19E's tax status was incorrect, and that it was not until 2009 that she reported to senior management that she had uncovered information that "supported her suspicions." (OSHA Complaint at 3-5.) In her complaint filed in this Court, Wong makes essentially the same allegations: "[Wong] had no basis prior to 2009 to conclude that there was a 50% or higher risk . . . that in 2005 19E had a PE in the U.S. imputed from its relationship with Freemantle."

12

(Compl. ¶ 20.)  And "[d]uring 2009, Wong repeatedly provided information to some of CKX's most senior executives . . . regarding the tax consequences associated with CKX's acquisition of 19E in 2005."  (Compl. ¶ 16.)

Moreover, the alleged adverse action taken by CKX against Wong – her termination in 2009 – is the same in both complaints. CKX is correct that Wong has left out allegations about CKX's Audit Committee, but that does not change the fact that the underlying claim – that Wong was terminated in 2009 for raising concerns about the tax status of 19E – is the same here as in the complaint filed with OSHA.  In short, there is no basis to find that the claims filed in this Court are not the same claims that were raised before OSHA.

### C.

The defendant also argues that de novo review should not apply when the case is so far along in the OSHA process because it would be a waste of both OSHA and federal judicial resources. This argument is contrary to the plain language of the Sarbanes-Oxley Act and has been correctly rejected by several courts.

18 U.S.C. § 1514A provides:

13

> [I]f the [DOL] has not issued a final
> decision within 180 days of the filing of
> the complaint and there is no showing that
> such delay is due to the bad faith of the
> claimant, [an employee may bring] an action
> at law or equity for de novo review in the
> appropriate district court of the United
> States, which shall have jurisdiction over
> such an action without regard to the amount
> in controversy.

18 U.S.C. § 1514A(b)(1)(B). Therefore, three requirements must

be met in order for an employee to seek de novo review by a

district court. First, 180 days must have elapsed since the

filing of the OSHA complaint. Second, OSHA must not have issued

a final decision. Third, the delay must not have been caused by

the bad faith of the employee. If these requirements are met,

then "a complainant has the statutory right not merely to

undefined relief in another forum, but to de novo review in

federal district court." Stone v. Instrumentation Lab. Co., 591

F.3d 239, 245 (4th Cir. 2009) (quoting and citing 18 U.S.C. §

1514A) (internal quotation marks omitted).

CKX does not argue that any of these requirements have not

been met. Well over 180 elapsed days between the filing of the

OSHA complaint and the filing of the complaint in this Court.

OSHA had not issued a final decision with regard to Wong's

complaint. After OSHA issued its findings, Wong timely filed a

petition for review by an ALJ, who had not yet issued any

decision. There is no argument, nor is there any evidence to

14

indicate, that the delay in the administrative process below was due to any bad faith by the plaintiff.

CKX argues that notwithstanding the language of the statute, a plaintiff should not be able to file an action for de novo review in federal court when the administrative process is sufficiently far advanced because that procedure is a potential waste of federal court and DOL resources.  The short and definitive answer to this argument is that it is not a basis to ignore the plain wording of the statute.  CKX should direct its argument to Congress, not to this Court.  Other courts considering this issue have found that a plaintiff had the right to de novo review, even though such a case was further along in the administrative process than Wong's.  The Court of Appeals for the Fourth Circuit, in dealing with a plaintiff who had already obtained a decision from an ALJ and sought review by the ARB, held that "the text of [the Sarbanes-Oxley Act] is clear - if the DOL has not reached a final decision within the time period established by Congress," the employee has a right to de novo district court review.  Id.; see also Lawson v. FMR LLC, 724 F. Supp. 2d 141, 149-50 (D. Mass. 2010), rev'd in part on different grounds by, 670 F.3d 61 (1st Cir. 2012); Hanna v. WCI Cmtys., Inc., 348 F. Supp. 2d 1322, 1328 (S.D. Fla. 2004) ("[A]s a matter of law, . . . the plain language of 18 U.S.C.

15

§ 1514A(b)(1)(B) allows [a complainant] to bring [a] whistle-blower complaint in [federal] court because the DOL 'ha[d] not issued a final decision within 180 days of the filing of the complaint.'") (alteration in original).

CKX also relies on comments made by the Secretary of Labor in 2004:

> [I]t would be a waste of the resources of the parties, the Department, and the courts for complainants to pursue duplicative litigation. . . . Where an administrative hearing has been completed and a matter is pending before an administrative law judge or the [ARB] for a decision, a Federal court also might treat a complaint as a petition for mandamus and order the Department to issue a decision under appropriate time frames.

29 CFR Part 1980, 2004 WL 1876043 (2004). CKX thus urges this court to issue a writ of mandamus ordering OSHA to issue a decision because this would arguably produce a more efficient resolution of the complaint.

The Court of Appeals for the Fourth Circuit rightly rejected this same argument holding that, "[n]otwithstanding the Secretary's 'anticipation' on how courts will interpret and apply § 1514A(b)(1), the Secretary's invitation to transform a right to de novo review in district court into a request for mandamus cannot be squared with the statutory language chosen by Congress." Stone, 591 F.3d at 248. "Neither the Secretary nor

16

the courts have the authority to engage in creative interpretation of the statute to avoid duplication of efforts, even if the goal for doing so is laudable." Id.

"When a statute's language is clear, [the court's] only role is to enforce that language according to its terms." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 236 (2d Cir. 2006) (quoting Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 291 (2006))(internal quotation marks omitted). Under the plain terms of the Sarbanes-Oxley Act, Wong has a statutory right to de novo review because she has met the requirements of the statute.

Accordingly, the defendant's motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are **denied**.

**IV.**

Alternatively, the defendant asks this Court to compel arbitration of the plaintiff's claims, pursuant to a clause in the employment contract.

Under 9 U.S.C. § 4, "a district court must enter an order to arbitrate upon being satisfied that the making of the

agreement for arbitration or the failure to comply therewith is not in issue." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S 1, 23 n.27 (1983) (quoting 9 U.S.C. § 4 (2006)) (internal quotation marks omitted). Therefore, "the role of courts [when asked to compel arbitration] is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." Shaw Grp., Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003) (quoting PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 2003)) (internal quotation marks omitted). However, in determining whether an obligation to arbitrate exists, a court must examine whether the agreement "has been overridden by a contrary congressional command." CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 669 (2012) (quoting Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)) (internal quotation marks omitted).

Until 2010, complaints alleging a violation of Sarbanes-Oxley whistleblower protection could be subject to arbitration. See Guyden v. Aetna, Inc., 544 F.3d 376, 384 (2d Cir. 2008) ("Because we find no inherent conflict between the purpose of [the Sarbanes-Oxley Act] whistleblower protection provision and mandatory arbitration, we hold that such claims are

18

arbitrable."). However, in 2010, Congress passed the Dodd-Frank Act ("Dodd-Frank"). Section 922 of that Act amended the Sarbanes-Oxley Act to bar the arbitration of whistleblower claims. Pub. L 111-203. Title IX, §§ 922(b)-(c), 929A, July 21, 2010, 124 Stat. 1848, 1852.

The Sarbanes-Oxley Act now provides:

> No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under [the Sarbanes-Oxley whistleblower protection provision].

18 U.S.C. § 1514A(e)(2). Therefore, after July 21, 2010, the enactment date for Dodd-Frank, Sarbanes-Oxley whistleblower claims are no longer arbitrable.

The dispute in this case arose out of events that occurred between 2006 and 2009, prior to the passage of Dodd-Frank. Further, the parties entered into the arbitration agreement in 2006. In light of these facts, the defendant argues that the amended version of Sarbanes-Oxley Act does not apply to the present dispute and that applying the ban on arbitration would have an impermissible retroactive consequence for the parties' substantive rights because it would impair the parties' contractual agreement to arbitrate this dispute. Therefore, the

issue is whether to apply the 2010 amendment to the present
dispute.

Generally, "retroactivity is not favored in the law.  Thus,
congressional enactments and administrative rules will not be
construed to have retroactive effect unless their language
requires this result."  Bowen v. Georgetown Univ. Hosp., 488
U.S. 204, 208 (1988).  However, the Supreme Court has also
instructed that there are many situations in which courts must
"apply the law in effect at the time [they] render[] [a]
decision." Bradley v. Sch. Bd. of City of Richmond, 416 U.S.
696, 711 (2006).

The Supreme Court in Fernandez-Vargas v. Gonzales, 548 U.S.
30 (2006), articulated a three-step process for determining
whether a statute should be retroactively applied to affect some
allegedly vested right that existed prior to a statute's
enactment or to impose some new burden.  Id. at 37-38.  First, a
court must look to "whether Congress has expressly prescribed
the statute's proper reach, and in the absence of language as
helpful as that [a court should] try to draw a comparably firm
conclusion about the temporal reach specifically intended by
applying [the] normal rules of construction." Id. (quoting
Landgraf v. USI Film Prods., 511 U.S. 244 (1994), and Lindh v.
Murphy, 521 U.S. 320, 326 (1997)) (internal citation and

20

quotation marks omitted).  If this first step fails to provide
an answer, a court should then "ask whether applying the statute
to the person objecting would have a retroactive consequence in
the disfavored sense of affecting substantive rights,
liabilities, or duties [on the basis of] conduct arising before
[its] enactment."  Id. (quoting Landgraf, 511 U.S. at 278)
(alterations in original).  Finally, if the court finds that
applying the statute would have a retroactive consequence, then
a court should apply the presumption against retroactivity and
construe "the statute as inapplicable to the event or act in
question."  Id. at 37-38.

    With regard to the first step - whether Congress has
expressly prescribed the proper reach of the statute, or if the
normal rules of construction supply such an answer - "[n]othing
in Section 922 of the [Dodd-Frank] Act provides an express
congressional intent regarding retroactivity."  Pezza v.
Investors Capital Corp., 767 F. Supp. 2d 225, 228 (D. Mass
2011).  Furthermore, the court in Pezza, after conducting a
thorough statutory analysis using the normal rules of
construction, found that "congressional intent regarding the
temporal reach" of the ban on arbitration "to be far from
clear."  Pezza, 767 F. Supp. 2d at 232.  The first step thus
provides no clear answer to the question of retroactivity.

In the second step of the analysis, it is necessary to determine whether applying this statute to the current dispute would "have a retroactive consequence in the disfavored sense of affecting substantive rights." Fernandez-Vargas, 548 U.S. at 37 (quoting Landgraf, 511 U.S. at 278) (internal quotation mark omitted).  This step is accompanied by some difficulty because the statute at issue here appears to fall "within the scope of two competing types of statutes referred to in Landgraf." Pezza, 767 F. Supp. 2d at 232.  The first category of statutes are those that, when applied retroactively, affect "contractual or property rights" and thus retroactive application is disfavored because these are "matters in which predictability and stability are of prime importance." Landgraf, 511 U.S. at 271.  The agreement to arbitrate in this case arises out of an employment contract between the parties, which perhaps lends support to the defendant's position that the statute should not be applied to this dispute.

The second category of statute is that which "confer[s] or oust[s] jurisdiction." Id. at 274.  For statutes of this kind, applying the present law is normally proper because they "take[] away no substantive right but simply change[] the tribunal that is to hear the case." Id. (quoting Hallowell v. Commons, 239 U.S 506, 508 (1916)).  Therefore, "[p]resent law normally

22

governs  . . . because jurisdictional statutes speak to the power of the court rather than the rights or obligations of the parties." Id. (quoting Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 100 (1992)) (internal quotation marks omitted).

The ban on the arbitration of Sarbanes-Oxley whistleblower claims primarily affects the jurisdiction of the court to hear the substantive claim.  Accordingly, the statute at issue here more appropriately falls within the second category because it - despite altering a provision of a contract - "principally concerns the type of jurisdictional statute envisioned in Landgraf," Pezza, 767 F. Supp. 2d at 233, and does not affect the substantive rights of either party.

The Supreme Court has noted that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 628 (1985).  The Court of Appeals for the Second Circuit has adopted the Supreme Court's reasoning, holding that substantive rights are "not in any way diminished" by a determination of whether or not a dispute should be heard in an arbitral forum or a judicial one.  Desiderio v. Nat'l Ass'n of

Sec. Dealers, Inc., 191 F.3d 198, 205 (2d Cir. 1999).  This
Court reached a similar conclusion in St. Paul Fire and Marine
Insurance Company v. Employers Reinsurance Corporation, 919 F.
Supp. 133 (S.D.N.Y. 1996) (Sotomayor, J.), holding that
arbitration clauses only affect "procedural right[s]" and "the
parties' substantive rights remain amply protected."  Id. at
139.

    The right to have a dispute heard in an arbitral forum is a
procedural right that affects the forum that will decide the
substantive rights of the parties.  Therefore, applying the
present law to this dispute would not have a disfavored
retroactive consequence.  Rather, because the parties'
substantive rights remain unaffected by this statute, it is
proper to apply the present law to this dispute.  See Pezza, 767
F. Supp. 2d at 234 (holding that because agreements to arbitrate
do not affect underlying substantive rights Dodd-Frank's ban on
arbitration should "be applied to conduct that arose prior to
its enactment.").[2]

---

[2] Four other district court cases, upon with the defendant relies,
have held that section 922 of Dodd-Frank does not apply
retroactively because it affects contractual rights.  See
Blackwell v. Bank of Am. Corp., No. 7:11-cv-02475-JMC, 2012 WL
1229675 (D.S.C. March 22, 2012); Taylor v. Fannie Mae, 839 F.
Supp. 2d 259 (D.D.C. 2012); Holmes v. Air Liquide USA LLC, No.
H-11-2580, 2012 WL 267194 (S.D. Tex. Jan. 30, 2012); Henderson

Therefore, section 922 of Dodd-Frank applies to prohibit arbitration of this dispute.  Accordingly, the defendant's motion to compel arbitration is **denied**.[3]

_____

v. Masco Framing Corp., No. 3:11-CV-00088-LRH, 2011 WL 3022535, (D. Nev. July 22, 2011).  For the reasons explained above, the Court agrees with Pezza that section 922 is more appropriately viewed as concerning jurisdiction rather than affecting substantive rights.

[3] Because section 922 provides that the arbitration agreement cannot prevent judicial determination of this Sarbanes-Oxley claim, it is unnecessary to reach the parties' additional arguments as to whether the arbitration provision applies to this dispute.

## CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed above, the arguments are either moot or without merit.  The defendant's motions to dismiss for lack of jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure are **denied**.  Moreover, the defendant's motion to compel arbitration is also **denied**.  The Clerk is directed to **close any pending motions**.

**SO ORDERED.**

Dated:     **New York, New York**
           **September 10, 2012**

                              John G. Koeltl
                              United States District Judge

26